UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:05CV-143-H

LAURIE WINNER                                                                                    PLAINTIFF

V.

STATE FARM INSURANCE COMPANIES                                              DEFENDANT

**MEMORANDUM OPINION**

This is an action for payment under a home insurance policy that State Farm Insurance Companies ("State Farm") issued to Laurie Winner ("Winner"). Winner discovered damage that she and her consultants attributed to a hail storm. If true, the State Farm policy would cover the damage. State Farm denied a claim based upon its adjuster's personal observation and after a follow-up inspection by a licensed engineer. The parties agree that disputed facts require a jury trial to determine whether hail actually did damage the roof. However, Winner's complaint also includes a bad faith claim. State Farm asks this Court for a partial summary judgment on that claim.

I.

Winner sets forth the following facts to support her bad faith and gross negligence claims.
Winner listed her home for sale and began showing it to prospective purchasers in the early fall of 2004. A potential buyer hired a licensed home inspector. In the course of that inspection, he determined that Winner's roof had hail damage. A week later a new couple expressed interest in Winner's home. This couple also hired the same inspector, who issued the same opinion. This

couple told Winner they were interested in the home, but only if the roof was repaired. The couple then hired a roofing contractor to estimate the replacement costs. He had no difficulty recognizing that the divots in the shingles and the dents in metal roofing vents were the result of hail. At this point Winner sought the opinion of yet another roofing contractor, David Alberhasky ("Alberhasky"). He inspected Winner's roof and found hail damage as well.

Thereafter, Winner turned to State Farm which acknowledged its policy covered any storm and hail damage to Winner's home. State Farm promptly sent an adjuster from its claims office to examine Winner's roof. The purchaser's roofing contractor, Brooks, met the adjuster, Andre Barnett, so the two could inspect the roof together. Barnett observed hail strikes on the roof's metal vents, but found no damage to the roof itself. Based upon his personal investigation, Barnett presented a written report denying the hail damage claim. That report simply stated that the divots might be the result of hail or they might not. He offered no specific explanation for the divots in the shingles. State Farm denied Winner's claim based on Barnett's field notes which indicated normal wear and tear to the roof.

After the initial denial, Winner, through her attorney, asked State Farm to reconsider its decision. State Farm agreed to do so based upon an "objective," "independent" expert of its choosing examining the roof. State Farm employed EFI, a consulting engineering firm located in Lexington, Kentucky. That firm sent an engineer, Lori Parrish, to perform another investigation. She found no damage due to hail. Winner raises many questions about EFI's impartiality and about the thoroughness of Parrish's investigation. She claims obvious flaws in Parrish's investigation and clear departures from standard methodology. Nevertheless, State Farm accepted her conclusions.

Winner argues that there is nothing remotely independent about State Farm's consultant. She further argues that the reports of EFI, extracted through discovery, reveal Parrish's obvious bias and her transparent eagerness to shield State Farm from coverage. State Farm retained Parrish on 25 claims involving structural damage to an insured's home. These damage claims stemmed from hail storms, heavy rain storms, tornadoes, or nearby blasting activities. Winner argues that, apart from tornado damage, which was irrefutable and obvious for all to see, Parrish never attributed the insured's damage to an event covered by State Farm's policy.

II.

To sustain a bad faith claim against an insurance company an insured must present evidence from which a reasonable jury could conclude that (1) the insured must be obligated to pay the claim; (2) the insured lacked a reasonable basis in law or fact for denying the claim; and (3) the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed. *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993). In *Wittmer,* the Kentucky Supreme Court held that "an insured . . . is entitled to challenge a claim and litigate it if the claim is debatable on the law or the facts." *Id.* Mere negligence or errors in judgment fail to rise to the level of bad faith. *Motorists Mut. Ins. Co. v. Glass*, 996 S.W.2d 437, 451 (Ky. 1997). Rather, the insured must have evidence of outrageous conduct due to an evil motive or a reckless indifference to the rights of others. *Id.* at 452. The *Wittmer* court explained that:

> Before the cause of action exists in the first place, there must be evidence sufficient to warrant punitive damages . . . . this means there must be sufficient evidence of intentional misconduct or reckless disregard of the rights of an insured or a claimant to warrant submitting the right to award punitive damages to the jury.

864 S.W.2d at 890. The Court must consider the evidence in a light most favorable to Winner under this standard. Courts have been clear that "in order to survive a motion for summary judgment, a plaintiff in a bad faith action must come forward with evidence, sufficient to defeat a directed verdict at trial, which reveals some act of conscious wrongdoing or recklessness on the part of the insurer." *Matt v. Liberty Mut. Ins. Co.*, 798 F.Supp. 429, 434 (W.D. Ky. 1991), *aff'd*, 968 F.2d 1215 (6th Cir. 1992).

Typically, bad faith claims arise from denials of claims without any investigation whatsoever, the failure to respond to a claim request, an undue delay in that response or some other action that prays upon some economic disadvantage of the insured. None of these events occurred in our case. Here, State Farm's agent, Andre Barnett, conducted a timely personal inspection and informed Winner of his conclusion that the roof was not hail damaged. Not surprisingly, Winner disagreed with this conclusion. Barnett than engaged an engineer to perform a further evaluation. In any event, no one can say that State Farm failed to immediately investigate and respond to the claim.

It seems relatively clear that State Farm's failure to describe fully the reasons for its initial denial is, alone, not grounds for a bad faith action. *United Services Automobile Assoc. v. Bult,* 183 S.W.3d 181 (Ky. App. 2003). In addition, that Barnett, a long-time State Farm agent experienced in hail-damage cases, denied the claim based upon his own personal observation, without consulting an expert, also does not rise to the level of bad faith in these circumstances. Even a negligent investigation would not rise to the level of bad faith under Kentucky law. In any event, no evidence suggests that the initial investigation conducted was even negligent, let alone reckless or in intentional bad faith. Nor is it generally bad faith to seek an expert opinion

4

and rely upon it. *Sculimbrene v. Paul Revere Ins. Co.*, 925 F.Supp. 505, 508 (E.D. Ky. 1996). Two pretty logical reasons support these conclusions: (1) it is reasonable for one to rely upon their own observation and (2) it is reasonable for one to hire an expert. Unless these actions are part of a concerted effort to delay or thwart a claim, they do not constitute outrageous behavior.

The only remaining issue is whether State Farm somehow conspired with an engineering firm to obtain favorable reports. The only basis for a bad faith claim could be the assertion that Barnett knew that hail had damaged the roof, yet fraudulently gave a personal opinion to the contrary and conspired with a licensed engineer to do the same. Winner argues that the opinion itself was not based upon an independent inquiry; evidence of this is the sloppy methodology and incomplete investigation. Further, Winner alleges that the evidence of the conspiracy is that Ms. Parrish always gives the same opinion; that she has never issued an opinion favorable to an insured. This would constitute fraudulent behavior and would certainly support a bad faith claim. The Court concludes that the circumstantial evidence of such egregious conduct falls in the realm of speculation.

To be sure, some other state courts have recognized that a pattern of pro-insurance company reports by an "independent" investigator could lead to a conclusion of bad faith on the part of the insurer. *See, e.g., State Farm Lloyds v. Nicolau*, 951 S.W.2d 444, 448 (Tex. 1997) (concluding that a finder of fact could find that bad faith existed where the "independent" consultant performed the vast majority of his work for insurance companies, that the insurer was aware of the consultant's lack of objectivity, and that the insurer's reliance on the reports in denying a claim was merely pretextual). However, Kentucky law emphasizes that for an insurer's conduct to rise to the level of bad faith, the "evidentiary threshold is high indeed."

*Bult*, 183 S.W.3d at 186.  The insurer's conduct was driven by "evil motives or by an indifference to its insureds' rights.  Absent such evidence of egregious behavior, the tort claim predicated on bad faith may not proceed to a jury."  *Id.*  The *Bult* court opined that "[i]nadvertence, sloppiness, or tardiness will not suffice; instead the element of malice or flagrant malfeasance must be shown."  *Id.*

  Here, Winner has shown a relationship between State Farm and Parrish.  However, proof of a relationship falls far short of an inference of bad faith.  Winner has not shown that the potential for impropriety ripened into actual tortious conduct.  The circumstances are somewhat similar to those in *Bult.*  There, the insurance company failed to assign two separate adjusters to two claims, creating the *potential* for improper handling of claims.  However, the court in *Bult* concluded that "the existence of a mere potential conflict does not suffice to meet the burden of proof imposed upon the [plaintiffs] . . . The potential for mischief *must be shown to have ripened into the reality of tortious conduct.*" *Id.* at 188 (emphasis added).  Even though Ms. Parrish's investigation may have not satisfied Winner's expectations or may not have met industry standards, "sloppiness . . . will not suffice" under Kentucky law for a finding of bad faith; indeed, "malice or flagrant malfeasance must be shown."  *Id.* at 186.  Winner has no evidence that any of the other opinions were fraudulent or biased.  Of course, such evidence would be impossible to obtain at this point in time.

  This case is fundamentally a difference of opinion between a number of people who investigated the same condition.  Winner needs much more to permit a reasonable inference of bad faith.  On the record presented to this Court, there is insufficient evidence for any jury to conclude that State Farm acted in bad faith or with gross negligence in denying Winner's claim

based upon its own investigation and that of a licensed professional engineer.

    The Court will enter an Order consistent with this Memorandum Opinion.

cc:    Counsel of Record